The next case on the calendar is DePizio v. Empire State Development. Good morning, Your Honors. Anna Marie Richman, may it please the Court, for Plaintiff Appellant Roseanne DePizio and Dreamco Development Corporation. Your Honors, this is an appeal from a 12B6 dismissal, and we're asking you to remand this case so that the Court evaluates the Plaintiff's sex discrimination claim, which the District Court did not entertain, the conspiracy to discriminate against my clients on the basis of Ms. DePizio's gender. Essentially, the Plaintiff Appellants here are complaining that state actors and private parties—oh, excuse me, Your Honor, I meant to ask you in advance, may I reserve ten minutes for rebuttal on this? So you're going to take ten minutes on your affirmative and ten minutes on rebuttal. Yes, ma'am. Thank you, Judge. Essentially, the Plaintiffs complain that state actors and private parties conspired to deny them equal protection. And I will admit, Your Honor, I came into this case after the Magistrate Judge issued his report and recommendation. The complaint before the courts is a bit of an alphabet soup. There's a lot in it. I think what we're focusing on here is the portion of that alphabet soup that spells out sex discrimination. What we have is a case where the Plaintiffs are complaining that they were treated differently on the basis of Ms. DePizio's gender, that the Plaintiff and her women- and minority-owned business were treated differently than similarly situated male contractors, that that differential treatment was on the basis of Ms. DePizio's gender, and that she was harmed by that in violation of her right to equal protection. What evidence that this was state action has she pled, and what evidence of actual sexual stereotype under the line of cases of my back case and things of that sort do you have? The state action is by virtue of the persons who were engaged in the conduct. Sam Hoyt, Tom Dee, Mark Smith, Empire State Development, and Erie Canal Harbor Development Corporation are indisputably state actors. We're arguing that this is a Section 1983 conspiracy, that those state actors- What evidence of conspiracy have you alleged in a plausible Iqbal way? Your Honor, the evidence of conspiracy that's been alleged by my predecessor in this case is pages and pages and pages of detailed discussion of alleged differential treatment, adverse treatment of Ms. DePizio and the company that she was representing, and there's pages of it. I can give you the first one chronologically. No, there are pages of differential treatment, but what specifics of conspiracy which brings in the government is what I'd like- The communications between Mr. Dee, Mr. Smith, and Mr. Hoyt, Your Honor. The communications to other contractors immediately after the award of the bid by Mr. Smith about how they would be in touch and about how Ms. DePizio doesn't like them much. The communications back and forth between Dee and Smith about Ms. DePizio's conduct at various meetings, which is couched in terms that it's our position would not have even entered their minds had it not been for Ms. DePizio's gender. They talk about her- Help me. I guess I'm asking the same question as my colleague. It's a long complaint, 80 pages, 400 paragraphs, and there are allegations. There's definitely harsh criticism leveled against your client and DCC over this project and the problems with it. There are statements the DCC clearly underestimated the projects. There's statements you can only take about 5% of what your client says is truthful. I'm having difficulty finding allegations that I would say speak to gender discrimination, however. The gender discrimination, Your Honor, the question, and I have pages of it, the question about Ms. DePizio engaging in lots of grunts and negative body language at the meeting. The fact that they talked about her sitting through meetings and seething and not uttering a word. Why is that? Why is that sexual? Because, Your Honor, if it had been a man, nobody would have bothered to talk about her facial expressions, her body language, and what her emotional state was. It's our contention that this focus on Ms. DePizio's emotional state and on certain conduct that they could denigrate in terms that people use to disparage women was evidence of their doing and how they're planning to take the next step and how they're going to not let her bid again are evidence of the conspiracy. If the focus is on what was pleaded that shows gender discrimination as opposed to what was pleaded that shows state participation conspiracy so that it was a matter of state action, to the extent that you're talking about inferences pleaded of gender discrimination, the McDonnell Douglas formula very much favors you at this stage because the McDonnell Douglas formula is that very, very little is needed until the defendant comes out with an explanation for the actions. At that point, all the presumptions drop away. According to McDonnell Douglas, as we've recently re-explained it in Little John, you need almost, you need very, very little. You need only minimal support for the inference of discrimination until the defendant comes out so that when it's addressing 12B6, addressing the complaint, the complaint doesn't need to satisfy Iqbal the way complaints in any other area do. I thought the troublesome problem was the inferences of state action as opposed to private action as to which the McDonnell Douglas wouldn't help you. Your Honor, I think that the state action, I think the reason the district court rejected the state action is that both the magistrate judge and the district judge took the position that any adverse state actions were directed against the principal, that is DePizio Construction Company, which is a company owned by Ms. DePizio's father and a partner. It's our contention that the hostility that was directed toward this, the principal contractor and my client and her company, which is called Dream Co., was there because of her gender. This is a five-foot-tall-inch woman . . . . . . Yeah, no, but you're not answering, I don't think, Judge LaValle's question. Even if something is sufficient to get by McDonnell Douglas on, was it sexually based, you still have to say something about why this was a conspiracy with state. The fact that the district court did not go into that because it found the thing causally too distant, which may or may not be right, doesn't tell us anything about whether you have alleged a conspiracy with respect to this subcontractor. I'm sorry, Your Honor. I think that the precise focus of the complaint is on . . . well, I shouldn't say precise because it is anything but precise. I think that the focus for my purposes of the complaint is on specific actions by state actors and their co-conspirators directed at my client and her company. She was the public face of DiPizio Construction. She went to all of the meetings on behalf of DiPizio Construction. She at some point in May of 2013, I think it is, decided to send a man to construction meetings in hopes that that would get them to back off the animosity that was focused toward her. At that point, it seems they had already made up their mind that they were getting rid of her and her father's company and her company. But the point here, Your Honor, is that the state action that we're complaining about was directed at my client, my client in her capacity as the public face of the entire contractor on the project, and we're saying that state action was direct. It wasn't about DiPizio, notwithstanding the contractual relationship. The argument that I made in the motion, in the objections, and in the objections and in our brief, is that the focus of the animosity by the state actors was toward my client and her company. It's in the complaint, Your Honors. I did ask Judge Geraci for an opportunity to amend if he sent it back. He obviously . . . I never got that. I would love to amend that complaint, but I believe that we have given the court enough to survive 12B6, and we're asking for an opportunity . . . What did the judge say about the opportunity to amend the complaint? I don't believe he addressed that, Your Honor. He . . . You asked. Yes, he did. Yes, he did. He said, she already got one chance, and he didn't think there was anything she could say that would fix it. Yeah, but was it . . . was his decision based on futility, or was it based on you had one chance, and that is all that one really normally gives? I thought his argument was actually based more on the notion that we hadn't gotten there properly, because we hadn't raised the very question before the magistrate judged the first time out. I think . . . I couldn't tell where he was going with the other piece. It seemed a little offhand. You did amend the complaint? No, sir. The case was originally filed in the Southern District of New York, and was amended there . . . Your Honor, to tell you the truth, I can't tell you the distinctions between the first complaint and the amended complaint. They are both . . . When you say you had one chance . . . That's what the judge is talking about. That's not . . . the one chance is not the original complaint, but one amended complaint. There is an original complaint and an amended complaint. Both of those were filed in the Southern District, and then the whole thing got shipped to the Western. The amended complaint, frankly, I don't think does a heck of a lot to improve on the original complaint. The amended complaint was designed to change what? What was the nature of the amendment? I think it was to address the RICO claims with greater specificity and accuracy, Your Honor, and I don't think . . . I think the court got it right on the RICO claims. I'm not arguing on the RICO claims. It was not about the issues that I'm arguing. Any other questions before I sit down? Thank you, Your Honors. May it please the Court. My name is William Brennan, and I'm representing Erie Canal Harbor Development Corporation, Empire State Development, Messers D., Hoyt, and Smith. With respect to the issue that came up at the end of counsel's argument concerning leave to amend, Judge Wood did grant the plaintiffs leave to amend, and also saying that, quote, I would not expect Ms. DiPizio to have another opportunity to amend his complaint. They used that one opportunity to reinforce their RICO claims, and they used that company, because Judge Woods had noted the serious issues presented by standing, and they used the amended complaint to describe the relationship that's said to exist between DCC . . . I'll call it DCC because of the ubiquitous DiPizio . . . Then, in recommending dismissal of the amended complaint, the magistrate judge said, quote, plaintiffs have not sought leave to amend their complaint a second time. Then he went on to find that, quote, dismissal with prejudice is particularly appropriate where, as here, plaintiff's complaint has been amended and there's no indication of additional facts that might lead to a viable complaint. Then, in their objections . . . The magistrate judge was commenting that the plaintiffs had not sought leave to amend the complaint a second time before learning that their complaint would be, by the recommendation of the MJ, rejected and by the ruling of the district court, rejected. The time to ask to amend your complaint is when you find out it's not acceptable in its present form. Well, they were responding to our motion to dismiss the complaint . . . Yes, but they were opposing your motion to dismiss. Yes, and the magistrate . . . The time that one needs to worry about before you find out whether the court will rule that it's inadequate . . . I see where you're headed, Your Honor, and I think the district court also addressed it because in appealing and in filing their objections to the R&R, they didn't seek to say . . . Okay. After it was dismissed, they then, after, did not seek to amend the complaint. Nor have they . . . Because that's very different. We held . . . I wrote the opinion, but Judge LaValle was on it in Pelaeus, I think, that asking before, it doesn't amount to a hill of beans. Although it is fairly customary, I think, that when you're responding to a motion to dismiss for alleged . . . Yes, but that can't bar you. Understood. And we're not saying that. On this appeal, on this appeal, they haven't asked for leave to amend until today. Until today. Not in their main brief, and they didn't have a report. So they've never asked for leave to amend the complaint, following the district judge's acceptance of the magistrate judge's . . . They never did. . . magistrate judge's recommendation. No, you're right, Judge LaValle, and on this . . . Never until today, asked for leave to amend. Yes, Your Honor. I don't have a lot of time. What I'd like to focus on first, if I may, is how this entire case has morphed from a conspiracy to drive Ms. DiPizio's father's company from the project, as part of an alleged RICO conspiracy. It's morphed from that into a totally different conspiracy now. Now the conspiracy is, we're driven by gender-based animus against Ms. DiPizio. So it's not just a technical pleading. The whole nature of the case . . . Yeah, but the question is, if pleading sex discrimination under McDonnell Douglas in our cases is easy, the question is, is there enough of a pleading about conspiracy that can apply to that? That's what we keep coming back to, and really what I hope that you and your co-counsel will be addressing. Yes, Your Honor. At pages fourteen to about twenty of our brief, we point out how the documents they rely upon to support their gender-based conspiracy, an engineer's report, my law firm's report, the notice of intent to terminate her father's company itself, none of them contains a syllable referring to Ms. DiPizio or her company, none. With respect to the emails that are supposedly so riven with hostility towards Ms. DiPizio as a woman, many of them, they're in a chart on page seventeen of our brief. There's no suggestion whatsoever of gender-based antipathy torture. What about suggestion of state involvement in whatever animus there was? The state involvement was us, the state, terminating Mr. DiPizio's corporation. Do I understand you to be saying that while there was evidence possibly, possibly, of conspiracy with the state with respect to the father's company, and while there may or may not be allegations of sex discriminations by individuals, there is no allegation of conspiracy with respect to these. Is that your point? No allegation of conspiracy with respect to so-called gender-based hostility. Yes. Our position is there's nothing in the record. You can't read seven emails and four memorandum, things like that, that don't have a scintilla of gender-based mentioning, much less animus. You can't say, I say it's gender-based because of my subjective interpretation. That's not the law in this court. That's not the law. There's got to be evidence of gender-based discrimination, and then you determine whether it's serious. But there's no evidence in any of the memoranda or any of the emails of any antipathy towards Ms. DiPizio or her company. Let me see if I understand you. You're saying that even if there is evidence of a conspiracy to do A, among various people, and even if there is evidence that some of those people have did some things which constitute wrongs of a sort B, we can't simply jump from that to say that there was conspiracy among those people to do B. I think that's correct, Your Honor. What we're saying is there's no evidence of gender-based animus, and the state action that supposedly exists was not directed at Ms. DiPizio or her company. The state action was directed at her father's company, and he was the one running the project. I'm out of time. The argument is that there are no allegations of sex-based discrimination, that there are general allegations about differential treatment. Other contractors were treated differently, but no allegation of the complaint that they – nothing about whether women were in leadership positions in those companies. It's really a RICO complaint that morphed into a discrimination complaint. And with respect to other contractors, it's one other contractor whom we didn't select, the surety selected that contractor when they were terminated. And it's not that it was done on racial – I'm sorry, on gender-based animus, but a successor contractor was needed. Thank you, Your Honors. Your Honor, Ed Bloomberg for Phillips, Lytle, and Mr. Brennan. I have heard you quiz Mr. Brennan fairly strongly on the issues that I was going to raise regarding no evidence of a conspiracy that involved at least the law firm and the law firm partner. Mr. Brennan addressed most of that. I was going to at least make a comment that seething is a gender-neutral word, and it's the only word in the mouth of Phillips, Lytle, or Mr. Brennan in the entire record. And there's been significant discussion. I'm certainly available to answer any additional questions Your Honors may have regarding Mr. Brennan and Phillips, Lytle's conduct. But right now I'm in a position where if I said anything more, I'd simply be repeating what he's already said. Thank you, Your Honors. Well argued. Good morning, Your Honors. Michelle Hutchinson on behalf of Defendant Apple Lee Lehman. May it please the Court. Ms. Lehman has such little involvement with this case, with the facts of this case, that it's hard to even understand plaintiff appellants naming her as a defendant in this action. With respect to the allegations of gender-based discrimination, plaintiffs emphasize that it was Dee Hoyt and Smith, all gentlemen, there are no allegations of any kind of gender-based discrimination against my client, Ms. Lehman. There are no facts. Whether they're in the complaint, not in the complaint, the first complaint, the amended complaint, there is nothing to plead against Ms. Lehman for any kind of gender-based discrimination. So consequently, there was no conspiracy, or she was not part of any conspiracy to deprive Ms. DiPizzo or Dreamco of any constitutional right based on her gender. It's just not there. The district court was correct in dismissing the equal protection claim for lack of state action on behalf of Ms. Lehman because, again, her only defense that related to DiPizzo construction, she was never asked to do anything with respect to Dreamco. She never gave any information or argument or opinion with respect to Dreamco or Ms. DiPizzo. Totally removed. There was nothing involving. She was asked to look at some documents to give an opinion about how the project was going. Right. It was not an expert opinion, as plaintiffs contend. It was an opinion. Actually, she wasn't even told what kind of opinion to give. She was given a couple of documents. It was told to her that the project was behind schedule, and could she look at them and give her thoughts? Could she look at these documents and give her thoughts on what was going on? Again, this related totally and only to DiPizzo construction. It had nothing to do with Ms. DiPizzo herself or her company. There was no involvement, no state action on the part of Ms. Lehman with respect to the allegations in the complaint of discrimination or conspiracy to commit or conspiracy to violate Ms. DiPizzo's equal protection rights under the Constitution. Again, not to beat the dead horse and not to repeat what I may have just said, there's just absolutely nothing in the record. There's nothing in the first complaint. There's nothing in the amended complaint. There are no facts. There's nothing that can be brought forward to warrant or justify or support an argument against Ms. Lehman that she in any way conspired or was a part of any state action to deprive Ms. DiPizzo and or her company Dreamco of any right under the Constitution based on any gender discrimination. Ms. Lehman's complete and total involvement was those few documents based on a review of what DiPizzo Construction may or may not have done, may or may not have been related to why the construction project was behind schedule. She wasn't even told what conclusions they wanted her to come to. It was just here are some documents, look at them and let us know what you think. So there is nothing related to any kind of conspiracy to violate Ms. DiPizzo's rights based on her gender. Ms. Lehman was properly, well, the lower court properly dismissed the complaint and declined to allow any action further, especially with respect to Ms. Lehman. I would request that this court sustain the lower court's ruling in this case. May it please the court, Leonardo D'Alessandro Milbermackers, Placidus Insidon for the Lero Group. The Lero Group is a private corporation. They are not a state actor under section 1983, leaving only the notion that they were a participant in a conspiracy for gender based discrimination. There is no evidence that there was a conspiracy and the notion, or I should say no allegations of a gender conspiracy. And there is also even further a more attenuated position that my client participated in that conspiracy. And two points I would like to emphasize for the first is that there was a granite substitution issue raised on appeal as being a basis for gender discrimination. The appellate division of the state of New York found that the rejection of their granite substitution was in fact proper, that that could not be the basis for DiPizzo's, DiPizzo construction's breach of contract claim. Therefore to use that as a claim of a basis for conspiracy really goes contrary to the whole notion of race judicata in this case. And the same applies to the materials handling plan and the beneficial use determination. Again, the appellate division of the state court found that it was appropriate not to permit that under the contracts. If it was appropriate not to allow DiPizzo construction to proceed with that under the contract, that can't be a basis for gender discrimination. The remainder of the five points made by Lero in terms of their their project review has not really been challenged other than to say they disagree with it. That does not establish a pleading that my client was participating in a gender based discrimination plan, a conspiracy by the state actors, which I also agree with counsel that there was no general conspiracy. If there are no further questions, I'll rest. Thank you. Your honors. Thank you. I would like to start with the response to a question Judge LaValle asked of Mr. Brennan with respect to the request to amend the complaint. Record a eight eight zero footnote. Eight eight zero. Eight eight zero. Your honor. Please speak in the mic. Eight eight eight zero. Your honors, which is our objections to the report and recommendation footnote two. This is if the court allows plaintiffs to continue to pursue this action in us district court, plaintiffs will promptly move for permission to file an amended complaint setting forth their 1983 conspiracy claim, et cetera, et cetera. We raised it in that your honor. I am frankly, did you then? We did not. Your honor. After, after I will admit that after the magistrate, after the district judge sustained the report and recommendation dismissed the case and ordered judgment entered, I did not make a post judgment motion for permission to amend the complaint. Your honor, I figured it would be futile and maybe I'm wrong. And if I can be faulted for that, I apologize to everyone, but I don't know how to move to amend a complaint after a judgment when I thought the appropriate thing to do would be to have this court evaluate whether the complaint was properly dismissed. Obviously if the court remands it, we are going to move to amend the complaint. It seemed to me given the amount of resources that had been expended in all directions on this case. But why did you then say, uh, if you rule against me, we will amend. I said, if you grant our motion, we will amend. If the case is remanded to the. No, no. I didn't say now. I said in what you read to us from the magistrate report, the footnote two, there it says if you do this and this, which they did, we will move to amend. No, your honor. It says if you, if you reverse the magistrate judge and remand it, we will promptly move to file an amended complaint. Oh, I see. Yeah. Because it was an objection to the 12B6 dismissal. So I figured the first thing to do, if the judge let it survive would be to clean up the complaint. But if the judge didn't let it survive, what's the point? I see your point. I'm sorry. So that's, that's with respect to that point, your honor. Um, with respect to the question of the conspiracy, that the whole complaint poorly crafted as it is addresses a conspiracy. The section 1983 cause of action, which is brought against the Rico defendants addresses the conspiracy with respect to gender based antipathy. I will acknowledge that this is not the worst case this court has ever seen, but the complaint has, but I want to go back to this question. Uh, let's assume for the moment that the individual statements by individual defendants are sufficient to get by McDonnell Douglas's original thing. Let's just assume that they're not very strong as you say, but let's just assume that the fact that there is, let us assume alleged a conspiracy with respect to Rico things. How does that suffice to say that there is a, are facts alleged of a conspiracy to have these individuals then do that? That, you know, let me just, there's a conspiracy among certain people to do certain things. Yes, your events, which have nothing to do with sex discrimination. At that point, it's a conspiracy to violate Rico. And then some individuals in that conspiracy make comments that might be sexually offensive. How is that an allegation of a conspiracy to make sexually offensive? Because your honor, the complaint of the Rico conspiracy is a complaint that requires a repeatedly throughout the factual portion of the complaint stresses that the actions taken by these defendants were taken because, and the phrase that they use is she was a woman in a man's world. A complaint that is based on the, that is not based but motivated by arises out of these Rico defendants hostility to my client, my, my personal human client, as a woman who dared to come to the table in a man's world, in a man's business and attempt to hold her own, attempt to be treated as an equal participant and partner. The, the whole point of the Rico complaint, it talks about all the male stuff and everything else, but the, the reason the explanation given for what is the reason these folks got together and did it. There are numerous stressed references to, they did this because she was a woman and they didn't want her at the table. And your honor, I think that that point, this is, this is the, each one of these statements may be even ambiguous. They're not, they're not vile. They're not heinous, but taken together, they express an attitude on the part of state actors who had the ability to award state contracts that is hostile to my client on the basis of her gender that is directed against her because she was a woman that focuses on her gender in a way that, that, that I contend they would not focus otherwise. And I'm just understanding the record and making sure I get the chronology right. The project experiences delays, that's well alleged in the complaint. The general contractor, the company, your plaintiffs, the plaintiff's father is terminated and then lawsuits ensued in state court. DCC filed four actions in state court. And the surety, the surety is now not a part. Yes. Right. What, do you know the status of those? Your honor, to the best of my knowledge, first of all, I will, I would like to point out that some of those cases were filed before the termination. But as far as I know, the general contractor has lost each and every one of those cases in state Supreme court. And they are, some of them are on appeal. I think all of the appeals may be finished, but, but those cases are over and the general contractor has lost. I wanted to point out with respect to Mr. Brennan, there are actually two statements alleged. One is the one that was cited by either Mr. Brennan or Mr. Bloomberg. The other one is the comment that Mr. Brennan made during the course of that state court litigation, that all of this is Roseanne DiPizio's fault. And that was on page eight, one five, two of the record that's in the, in the complaint. Your honors, this is a case that never got the gender equal protection, gender focused, equal protection argument and the section 1980 conspiracy examined by the general contractor. There's no chance for discovery on those issues. There's all kinds of record is four volumes long of all kinds of stuff from the other case. I think it's a smokescreen. Well, maybe not a smokescreen, but a whole lot of extraneous stuff to what I believe was in artfully pled in the original complaint. This I believe is a complaint brought to seek redress for the original complaint for mistreatment of a woman in the construction industry on the basis of her, of her gender. And that's what we're here to ask you to send back to the district court to allow her an opportunity to pursue it. I don't think I need to tell this court, whether by personal experience or by all of the cases that come before you, how endemic gender based discrimination remains in our society. And what we've got is a woman who suffered that at the hands of state actors administering a state funded project for lots of money. The result is that she's out of a job with that company. And incidentally, with respect to other comparators among other discussions in the, in the complaint is the fact that the very kinds of things that Ms. Little piece of the inner Harbor redevelopment site in terms of the disposal of the, of the soil were permitted by the adjacent contractors, also male dominated. She was the only woman in the room. She was the only woman on the project and they didn't like it. And I have, if the court has any other questions, having none, thank you. Thank you all well argued by all. We will take an under it.